(Reap. Dec. 9100)

BRITISH CARS & PARTS, INC.
ROBERT E. LANDWEER & CO., INC. } *v.* UNITED STATES

Entry No. 294.

(Decided March 19, 1958)

*Lawrence & Tuttle* (*George R. Tuttle* of counsel) for the plaintiffs.
*George Cochran Doub*, Assistant Attorney General (*Joseph E. Weil* and *Daniel I. Auster*, trial attorneys), for the defendant.

RAO, Judge: This is an appeal for reappraisement of an importa tion of so-called M. G. Midget "TD" Roadsters, invoiced at $1,256 per automobile, entered at $997.07 each, and appraised at Canadian $1,282.27 each, net.

The case has been submitted for decision upon an agreed statement of facts which recites the following:

1. The involved automobiles were manufactured in England and sold to a Canadian firm, and were shipped from England to that firm, who thereupon placed them in storage intending to sell the cars in the Canadian market. Later this intention was changed, and thereupon the Canadian firm sold the cars to the American importer, and shipped them to the United States.

2. That at no time have "such or similar" automobiles been "freely offered for sale to all purchasers" within the meaning of those words as used in Sections 402 (c) and 402 (d), Tariff Act of 1930, either in England or in Canada, for home consumption or for exportation to the United States, nor have "such or similar" automobiles been "freely offered to all purchasers" within the meaning of Section 402 (e) of said Act; also "such or similar" automobiles within the meaning of those words as found in Section 402 (f) of said Act were not being manufactured in Canada.

3. That the imported automobiles were appraised at Canadian dollars 1,282.27, each, as representing the "cost of production" in Canada ascertained by reference to the fact that the cars had been imported into Canada from England, and were placed in storage with intent to sell them in the Canadian market, and were later sold by the Canadian importer to the American importer, and exported to the United States; or

4. That the "cost of production" of said automobiles in England as ascertained by reference to manufacture in England and subsequent sale thereof, as referred to in Section 402 (f) was English pounds 356 each.

5. That the sole dispute between the parties is whether the automobile should be valued at Canadian dollars 1,282.27 each or English pounds 356 each. Neither party denies the accuracy of these respective amounts.

By reason of the foregoing stipulation, it is apparent that there was no statutory foreign, export, or United States value for such or similar merchandise, and that cost of production is the only basis of value to be here considered. Cost of production is defined in section 402 (f) of the Tariff Act of 1930, as follows:

(f) Cost of Production.—For the purpose of this title the cost of production of imported merchandise shall be the sum of—

(1) The cost of materials of, and of fabrication, manipulation, or other process employed in manufacturing or producing such or similar merchandise, at a time preceding the date of exportation of the particular merchandise under consideration which would ordinarily permit the manufacture or production of the particular merchandise under consideration in the usual course of business;

(2) The usual general expenses (not less than 10 per centum of such cost) in the case of such or similar merchandise;

(3) The cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the particular merchandise under consideration in condition, packed ready for shipment to the United States; and

(4) An addition for profit (not less than 8 per centum of the sum of the amounts found under paragraphs (1) and (2) of this subdivision) equal to the profit which ordinarily is added, in the case of merchandise of the same general character as the particular merchandise under consideration, by manufacturers or producers in the country of manufacture or production who are engaged in the production or manufacture of merchandise of the same class or kind.

In the final analysis, the issue in this case is whether the actual cost of production in the country of origin, England, or a constructive cost of production in the country of exportation, Canada, shall be applied in finding a value for the instant importation.

That Canada was, in fact, the country of exportation has been established beyond peradventure of doubt by the stipulation of the parties. It is therein made abundantly clear that the subject automobiles were exported from England into Canada, there becoming commingled with the mass of goods in that country, and, thereafter, exported to the United States from Canada. This state of facts makes applicable the principle of the case of *Acker* v. *United States*, 1 Ct. Cust. Appls. 404, T. D. 31481, wherein it was held that the country of exportation is that country from which merchandise destined for ultimate delivery to the United States is shipped. In the instant case, it was not until after the merchandise arrived in Canada that it was intended and destined for shipment to the United States.

If the value of imported merchandise is to be predicated upon conditions which obtain in the country of exportation, any reference to an English cost of production would seem to be completely irrelevant. Plaintiffs contend, however, that inasmuch as such or similar automobiles were not produced in Canada, the cost of materials and/or fabrication employed in manufacturing such or similar merchandise can not be ascertained, and, therefore, it is impossible to apply the first subdivisions of section 402 (f). It is further urged that since the fourth element of statutory cost of production refers to the profit ordinarily added "by manufacturers or producers in the country of manufacture or production," it is proper to consider cost of production figures in England to determine the value of the instant merchandise. The case of *H. J. Heinz Company* v. *United States*, 43 C. C. P. A. (Customs) 128, C. A. D. 619, is cited in support of this position.

Counsel for the defendant contends that since the subject automobiles were, in fact, imported from Canada, their value must be defined in terms of an ascertained, albeit constructive, cost of production in Canada. It is argued that if the automobiles had been freely offered for sale for home consumption in Canada, or for exportation to the United States from Canada, a Canadian foreign or export value would necessarily apply, and that, therefore, cost of production must likewise rest upon a Canadian foundation.

An analysis of the definitions of value set forth in section 402 of the Tariff Act of 1930, as amended, the provisions of which are quoted below,[1] reveals that foreign value and export value are made to relate explicitly to the country of exportation, and market conditions prevailing in the country of origin, if it be other than the country of exportation, are of no consequence.

With respect to United States value, the country of exportation is an element to be considered only in the ascertainment of what constitutes prototype merchandise, or the date of exportation. Hence, no consideration of United States value would have the effect of furthering this inquiry.

In spelling out the elements which comprise cost of production, Congress has been somewhat less specific in terms of the country to which they relate. Subdivision (1) speaks of the cost of materials and labor in manufacturing such or similar merchandise, and presumably could be construed as referring equally to the country of origin as to the country of exportation. Subdivision (4) mentions the profit which is ordinarily added by manufacturers or producers of merchandise of the same general character, in the country of manufacture or production. Thus, presumptively, at least, it relates to the country of origin.

Subdivision (3), however, requires the ascertainment and addition of all "costs, charges, and expenses incident to placing the particular merchandise under consideration in condition, packed ready for shipment to the United States." By clear implication, this language contemplates a time when and a place whence imported merchandise is prepared for shipment to the United States. If such merchandise leaves the country of origin for exportation, directly or indirectly, to the United States, subdivision (3) can be implemented with reference

---

[1] (c) FOREIGN VALUE.—The foreign value of imported merchandise shall be the market value or the price at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale for home consumption to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, including the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

(d) EXPORT VALUE.—The export value of imported merchandise shall be the market value or the price, at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

(e) UNITED STATES VALUE.—The United States value of imported merchandise shall be the price at which such or similar imported merchandise is freely offered for sale for domestic consumption, packed ready for delivery, in the principal market of the United States to all purchasers, at the time of exportation of the imported merchandise, in the usual wholesale quantities and in the ordinary course of trade, with allowance made for duty, cost of transportation and insurance, and other necessary expenses from the place of shipment to the place of delivery, a commission not exceeding 6 per centum, if any has been paid or contracted to be paid on goods secured otherwise than by purchase, or profits not to exceed 8 per centum and a reasonable allowance for general expenses, not to exceed 8 per centum on purchased goods.

to that country. If, however, the country of origin is not also the country of exportation, the costs provided for in this subdivision, and required to be found for the proper determination of statutory cost of production, are not capable of ascertainment in the country of origin. Hence, it would appear, without question, that cost of production, like foreign and export values, derives from the country of exportation, for in no other place could merchandise be considered "packed ready for shipment to the United States."

This conclusion is fortified by reference to the legislative history of the cost-of-production provision of the Antidumping Act of 1921, the forerunner of the present provision, as expressed and explained in the case of *United States* v. *Henry Maier*, 21 C. C. P. A. (Customs) 41, T. D. 46378, as follows:

From the legislative history of said Antidumping Act of 1921, it appears that said section 206 was incorporated in H. R. 2435 through an amendment reported by the Senate Committee on Finance, which was adopted by the Senate and agreed to in a conference report upon the bill. In the report of said Committee on Finance to the Senate upon the antidumping act, after reciting the substance of said section 206, we find the following:

The purpose of this definition is to create a constructive foreign-market value based on the cost of material and labor at a time preceding the date of shipment of the imported merchandise which would ordinarily permit the manufacture or production of such merchandise in the usual course of business. It is not limited to the actual cost of the imported merchandise. * * *

It would appear, therefore, that it was not the intent of Congress, when it enacted said section 206, to limit the cost of production, in cases where said section was applicable, to the actual cost of production of the imported merchandise, including actual profit realized by the manufacturer, and we think a like construction should be given to said section 402 (e) of the Tariff Act of 1922. In other words, as we construe said paragraph 4, it is not enough to establish what the ordinary profit of the manufacturer of the imported merchandise was, if merchandise of the same general character was produced and sold by others in the *country of exportation*, and the profit made thereon is reasonably ascertainable. If not so produced and sold by others, the profit ordinarily made by the manufacturer of the imported merchandise in producing goods of the same general character as the imported merchandise may be resorted to in arriving at the statutory cost of production. We have so held with respect to said section 206 of the Antidumping Act of 1921. *Cottman & Co.* v. *United States*, 20 C. C. P. A. (Customs) 344, T. D. 46114. [Italics supplied.]

If, as it has been here determined, cost of production is a value to be found in the country of exportation, the absolute impropriety of finding cost of production in any other country becomes plainly evident. And this must be so, notwithstanding the fact that the appraiser's finding of such value in the country of exportation may be said to be hypothetical or constructive.

Surely, it must be realized that the selection of another country than the one from which the merchandise is exported renders impossible conformity with the statutory prescription, by the consequential

omission of the costs, charges, and expenses incident to readying the merchandise for shipment to the United States. On the other hand, the procedure followed by the appraiser in supplementing the country-of-origin figures, with the additional costs accruing in the country of exportation prior to shipment to the United States, which apparently is what he has done in this case, would seem to embody all the essential elements of which the statutory definition of cost of production is composed. Since it appears that subdivisions (1) and (4) of section 402 (f), *supra*, may or must relate to the country in which the merchandise is produced, it can not be said that the appraiser, in adopting country-of-origin figures and adding thereto country-of-exportation costs, charges, and expenses, has really departed from the statutory formula.

But even if he has, there is no proof in this record of another value which is properly acceptable as an alternative, once the English cost-of-production computation is eliminated. In this respect, the instant case is distinguishable from the case of *H. J. Heinz Company* v. *United States, supra,* wherein the court rejected constructive cost of production in favor of foreign value of similar merchandise. I am not unmindful of the following statements in the court's opinion:

It is not apparent from the record how the appraiser arrived at the value which he determined to be the constructive cost of production in England. It is to be noted that section 402 (f), *supra,* recites that the cost of production shall be the sum of "(1) The cost of materials of, and of fabrication, manipulation, or other processes employed in manufacturing or producing such or similar merchandise * * * (2) The usual general expenses * * * in the case of such or similar merchandise * * * (4) An addition for profit * * * equal to the profit which is ordinarily added * * * by *manufacturers or producers in the country of manufacture or production who are engaged in the production or manufacture of merchandise of the same class or kind.*" [Italics added.] Since it is undisputed in this case that there is no *production* of the imported (or similar) merchandise in England, the country of exportation, the *constructive* cost of production, as used in the present case, necessarily means the amount it would cost to produce the imported merchandise based on the hypothetical cost of materials, the hypothetical cost of fabrication, the hypothetical cost of manipulation, the hypothetical general expenses, and the hypothetical profits. We think it is far too speculative to be realistic to use a constructive cost of production based on the foregoing hypothetical factors, and we know of no prior decided case of our court which has affirmed such an appraisement.

\* \* \* \* \* \* \*

* * * As we interpret the pertinent portions of section 402, *supra,* it is, in our opinion, far more logical to appraise the imported merchandise on the basis of the cost of the "similar" English home consumption tomato pulp notwithstanding the difference in cost between the two than to base the valuation on a *constructive* cost of production which is inherently based on speculative and hypothetical factors. [All italics quoted.]

It affirmatively appears that the court, in finding a foreign value for similar merchandise in England, the country of exportation,

deemed it unnecessary to consider the alternative contention of appellant, the importer in the case, to the effect that "cost of production in France, the country of production, should be the basis for appraisement."

That it could not have found such a basis acceptable, were there no showing of some other value, seems implicit, not alone from the last portion of the opinion hereinabove quoted, but as well from the ultimate effect of the decision of that tribunal in the case of *H. S. Dorf & Co., Inc., a/c Joseph H. Meyer Bros.* v. *United States*, 41 C. C. P. A. (Customs) 183, C. A. D. 548. In that case, it appeared that the subject merchandise was appraised upon the basis of a constructive cost of production in the reputed country of exportation, namely, Mexico. The court found that France, not Mexico, was in fact the country of exportation, and that, therefore, the appraiser proceeded upon a wrong theory of law in predicating his return of value upon a Mexican cost of production. It also noted a failure of proof of value in France, and, despite an assertion that no such merchandise was manufactured in Mexico, affirmed "the judgment of the Appellate Division, with respect to the valuation of the goods on the basis of the Mexican cost of production," without, however, approving the rationale of the lower court's decision. In reaching that conclusion, the court observed:

Under the law, it was incumbent upon appellant in challenging the validity of the appraised value of the imported merchandise to comply with the two-fold burden fixed by the Tariff Act of 1930 and the long line of consistent judicial interpretations of the provisions thereof; namely, to produce competent evidence sufficient not only to overcome the presumption of correctness legally attaching to the valuation made by the appraiser but also to establish affirmatively the proper and different value upon which appellant relied as a ground of recovery. *Kittleson* v. *United States, supra,* and authorities therein cited; *Golding Bros. Co., Inc.* v. *United States,* 21 C. C. P. A. (Customs) 395, T. D. 46926.

The failure of proof of a proper value in the country of exportation is equally fatal to plaintiffs' cause in the instant case, and requires a finding that the presumption of correctness attaching to the appraiser's return of value has not been overcome.

Accordingly, I make the following findings of fact:

1. That the merchandise involved in this case consists of four M. G. Midget "TD" Roadsters, entered at $997.07 each, being an equivalent of and representing the cost of production of said automobiles in England of English pounds 356 each.

2. That said automobiles were appraised at Canadian $1,282.27 each, net, representing an agreed constructive cost of production in Canada.

3. That said automobiles were manufactured in England and thereafter sold and shipped to a Canadian firm which placed them in storage in Canada, intending to sell them in the Canadian market.

4. That said automobiles were not sold in Canada, but were, in fact, sold and exported therefrom to a purchaser in the United States.

5. That such or similar merchandise was not freely offered for sale to all purchasers in the principal markets of Canada, either for home consumption in Canada or for exportation to the United States.

6. That such or similar merchandise was not freely offered for sale to all purchasers in the principal markets of the United States, within the contemplation of section 402 (e) of the Tariff Act of 1930, *supra*.

7. That neither such nor similar merchandise was manufactured in Canada within the intendment of section 402 (f) of said act.

8. That the record is without proof of any statutory value for the involved automobiles in Canada, other than that at which the merchandise was appraised.

Predicated upon the foregoing findings are the following conclusions of law:

1. That Canada was the country of exportation.

2. That there is no statutory foreign or export value for such or similar merchandise in the country of exportation.

3. That there is no statutory United States value for such or similar merchandise.

4. That proof of cost of production in England, the country of origin of the subject merchandise, does not establish cost of production within the statutory formula prescribed in section 402 (f) of the Tariff Act of 1930, which relates to cost of production in the country of exportation.

5. That there is no evidence to overcome the presumptively correct value returned by the appraiser.

Judgment will issue accordingly.